IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GRAMERCY ADVISORS, LLC and<br>GRAMERCY FINANCIAL SERVICES LLC,<br><br>    *Plaintiffs,*<br><br>  v.<br><br>DOUGLAS COE and JACQUELINE COE,<br><br>    *Defendants*. | Case No.: 13-Civ-9069 (VEC)<br><br>**JURY TRIAL DEMANDED** |

## FIRST AMENDED COMPLAINT

Plaintiffs Gramercy Advisors, LLC ("Gramercy Advisors"), and Gramercy Financial Services LLC ("GFS" and together with Gramercy Advisors, "Plaintiffs" or "Gramercy"), by and through their attorneys, O'Shea Partners LLP, for their First Amended Complaint, allege as follows:

## NATURE OF THE ACTION

1. Douglas Coe and Jacqueline Coe (together "Coe" or the "Defendants") are multi-millionaires who engaged in tax shelter transactions in 2001 and 2002 with the aim of avoiding over $4 million in taxes on over $11 million in income. In connection with their shelters, Douglas Coe, on behalf of himself and Jacqueline Coe, retained Gramercy for the limited purpose of sourcing certain assets and executing certain transactions requested by him and his investment advisors. Coe contractually agreed to indemnify and save Gramercy harmless from and against all claims arising out of their relationship with Gramercy and its affiliates, including but not limited to any matter related to taxation.

2. The Coes' tax shelters were ultimately rejected by the IRS. Thereafter, Douglas and Jacqueline Coe violated their agreements and brought suit against Gramercy seeking to make it the unwilling insurer of their inherently risky tax investment.

3. Gramercy brings this lawsuit to recover, among other things, the damages it has incurred defending itself from Coes' meritless strike suit and for advancement and indemnification.

## PARTIES

4. Plaintiff Gramercy Advisors, LLC, is a limited liability company. It is owned by a New York corporation with its principal place of business in Connecticut.

5. Plaintiff Gramercy Financial Services, LLC is a limited liability company. The ultimate parents of Gramercy Financial Services, LLC are individuals domiciled in New York and California and the U.S. Trust Company of Delaware. The U.S. Trust Company of Delaware is a Delaware corporation with its principal place of business in New York.

6. Defendants Douglas Coe and Jacqueline Coe, husband and wife, are domiciliaries of the State of Georgia.

## JURISDICTION AND VENUE

7. There is complete diversity between the parties, and the amount in controversy is in excess of $75,000, exclusive of interest and costs. Therefore, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1332 and 1367.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events or omissions giving rise to the claims in this lawsuit occurred within this district.

9. This Court has personal jurisdiction over each of the Defendants. As set forth more fully herein, each of the Defendants has committed acts giving rise to personal jurisdiction in New York, and Defendants have consented to jurisdiction in this District.

## COMMON ALLEGATIONS

### A. Coe Seeks out Gramercy to Facilitate Tax Shelters Designed by his Independent Advisors.

10. Defendants are ultra-high net worth Georgia residents. In 2001 Defendant Douglas Coe sold his interest in a company called I&S Operations, Inc. Later that year, and seeking to avoid over $4.34 million in taxes on over $11.1 million in income from the sale of I&S Operations, he, on behalf of himself and his wife Jacqueline Coe, consulted with two non-parties – the accounting and consultancy firm of BDO Seidman LLP ("BDO") and the law firm of Proskauer Rose, LLP ("Proskauer") – to devise a tax-avoidance strategy. The tax-avoidance strategy involved the purchase and sale of distressed emerging market debt with high cost basis and low market value to generate a capital loss that could then be used to offset Defendants' substantial capital gains income.

11. With regard to the transactions at issue in this Complaint, Douglas Coe served as an agent for Jacqueline Coe. In his capacity as Jacqueline Coe's agent, Douglas Coe entered into certain contracts (the IMA, Belief Letter, and Contribution Agreements defined and discussed below) and made promises to Gramercy on behalf of himself and Jacqueline Coe as her agent with regard to the tax-avoidance strategy discussed herein.

12. As part of the strategy, Defendants retained Gramercy to source certain distressed debt assets and to execute transactions according to BDO and Proskauer's instructions. Defendants requested that Gramercy execute certain transactions on their behalf pursuant to the tax strategy selected by Defendants after consultation with their independent team of financial

and legal advisors. Many of these transactions were executed through financial exchanges located in New York City and with counterparties based in New York City. At no time did Gramercy provide Defendants with advice concerning the tax aspects of the strategy and, as set forth below, Defendants represented in writing on multiple occasions to Gramercy that Gramercy had not provided them with tax advice.[1]

**B.    Gramercy and Coe Memorialize the Terms of Their Relationship in Writing.**

13.    The terms of the relationship between Defendants and Gramercy were set forth in an Investment Management Agreement ("IMA") executed by Gramercy and Douglas Coe as of November 5, 2001. (*See* Ex. A.) Pursuant to the IMA, Gramercy purchased and sold certain financial instruments on Defendants' behalf and at their request.

14.    The IMA made clear that Gramercy was neither willing nor able to provide Defendants with any advice or guidance of any kind on tax matters or tax strategy. The IMA further made clear that Gramercy was unwilling to accept Defendants as investors unless and until they agreed to hold Gramercy harmless from any and all liability related to Defendants' investments and transactions.

Specifically, in Paragraph 7(c) of the IMA, Coe agreed:

> [Gramercy] is not required to inquire into or take into account the effect of any tax laws or the tax position of [Coe] in connection with managing the Account. To the fullest extent permitted by law, neither [Gramercy], its members or any of their respective affiliates and their respective partners, members, officers, directors, employees, shareholders and agents shall be liable in any manner to [Coe] with respect to the effect of any U.S. Federal, state, local or any other taxes of any nature whatsoever on the Account or [Coe] in connection with managing the Account or in

---

[1]    Coe also represented in writing to the IRS, under penalty of fine or imprisonment, that Gramercy did not promote or otherwise solicit or promote his participation in the investment and only provided investment – not tax – advice. (See Ex. D Responses to Inquiry 10.)

> connection with this Agreement or otherwise. [Coe] agrees that [he] has consulted [his] own tax advisor regarding the possible tax consequences of establishing the Account or entering into any investment made under or in connection with this Agreement. . . . **In addition, to the fullest extent permitted by law, neither [Gramercy], its members or any of their respective affiliates and their respective partners, members, officers, directors, employees, shareholders and agents shall have any personal liability to [Coe], or [his] partners, officers, directors, employees, shareholders or agents, by reason of any change in U.S. federal, state or local or foreign income tax laws**, or in interpretations thereof, as they apply to [Coe], whether the change occurs through executive, legislative, judicial or administrative action.

(Exhibit A, at 4-5) (emphasis added.)

15. Paragraph 7(C) of the IMA constitutes a valid and enforceable covenant not to sue which Defendants breached by bringing suit against Gramercy in bad faith and obvious breach. As a result of their breach of the covenant not to sue, Defendants are liable to Gramercy for damages and Gramercy is entitled to an order compelling Defendants to withdraw their Illinois lawsuit.

16. The IMA also made clear that Gramercy's role with regard to Coe's chosen tax strategy was limited, and that Gramercy's liability was therefore restricted. Section 2 of the IMA gave Gramercy the right to "take into account any strategies or suggestions made from time to time by the Client, or by any of its professional advisors (i.e. accountants or legal counsel) . . . [i.e., the tax strategies]."  (Exhibit A, at 1, §2.)  With regard to those "strategies or suggestions," Defendants agreed that Gramercy would "not be liable . . . [for] any act or omission by [Gramercy] based on the suggestions of any professional advisor of the Client."  (Exhibit A, at 4 §7(b).)  All of the actions taken by Gramercy with regard to Defendants' tax transactions were done at the direction of Defendants and/or their independent advisors.

5

17. Coe also agreed to indemnify Gramercy and to advance funds to it to cover expenses (including attorney's fees) incurred in defense or settlement of any claim arising out of or in connection with Gramercy's management of Defendants' accounts. (*See* Exhibit A, ¶¶ 7(e) & (f).) Indemnification running from Defendants to Gramercy was intended pursuant to the IMA, including indemnification for any suits brought by Coe against Gramercy. This is confirmed by, *inter alia*, the fact that the indemnification provisions contained in the IMA explicitly state that Coe shall indemnify Gramercy from and against "any claim or alleged claim, of any nature whatsoever" arising in connection with Gramercy's performance pursuant to the IMA. Accordingly, it is apparent from the language and purpose of the IMA that Defendants are obligated to indemnify Gramercy for losses incurred in connection with Defendants' lawsuit against Gramercy.

18. The IMA contains a choice of law clause in favor of New York law. (See Exhibit A, ¶14(d).)

19. In addition to the IMA, on November 5, 2001 Coe also executed a letter (the "Belief Letter") addressed to Gramercy stating the following:

> In connection with the execution of the Investment Management Agreement between Douglas R. Coe and Gramercy Advisors, LLC (the "Investment Manager"), the undersigned hereby represents and warrants to you that the investments made pursuant to the Agreement and all transactions related thereto (collectively, the "Transactions") are believed to be in accordance with all the laws, rules and regulations applicable to the undersigned.

(See Exhibit B.)

20. In the Belief Letter Coe also made numerous representations to Gramercy, as follows:

> The undersigned further acknowledges that: (a) it has consulted with its own financial, tax and legal advisors with respect to the

6

>Transactions and, in particular, the effect of the tax laws and regulations and the impact of any notices or announcements issued by the IRS, (b) it has not relied on the Investment Manager for any financial, tax or legal advice with respect to the Transactions, and (c) **[Coe] shall not have any claim against [Gramercy] in the event that any tax liability, problem or issue should arise in connection with the Transactions other than as a direct result of any negligence of [Gramercy] in effecting the investments pursuant to the Agreement**.

(*Id.*) (emphasis added.)

21. The Belief Letter constitutes a valid and enforceable covenant not to sue which Defendants breached by bringing suit against Gramercy in bad faith and obvious breach. As a result of their breach of the covenant not to sue, Defendants are liable to Gramercy for damages and Gramercy is entitled to an order compelling Defendants to withdraw their Illinois lawsuit.

22. In connection with their relationship with Gramercy, Defendants entered into three contribution agreements with Gramercy. (See Exs. E-G.) Pursuant to these agreements various transactions that were also the subject of the IMA and the Belief Letter were effectuated. Paragraph 3(d) of the Contribution Agreements provides in relevant part:

>This Agreement shall be governed by the internal laws of the State of New York. The Parties submit to and accept the nonexclusive jurisdiction of any court of appropriate jurisdiction of the State of New York and the United States of America located in New York City, New York, with respect to any action, suit, or proceeding arising out of or based upon this Agreement or any matter relating hereto. Each party waives any objections that it may have to the laying of venue in any such Court.

This action is "related to" the transactions that are the subject of the Contribution Agreements. Accordingly, Defendants have consented to jurisdiction in this district.

7

### C. The IRS Rejects Coe's Tax Shelters and Coe Unlawfully Seeks to Hold Gramercy Accountable.

23. In 2002, the Coes filed their 2001 tax return which included a deduction for their claimed loss of approximately $6.0 million. In 2003, the Coes filed their 2002 tax return which included a deduction for their claimed loss of approximately $5.1 million.

24. The Internal Revenue Service thereafter rejected Coes' tax strategy and disallowed the claimed losses associated with it.

25. On December 6, 2012, in contravention of the IMA and the Belief Letter, Douglas and Jacqueline Coe filed suit against, *inter alia*, Gramercy asserting claims in direct violation of the IMA and the Belief Letter, resulting in Gramercy's causes of action herein for damages, advancement, and indemnification. This lawsuit was brought in bad faith and obvious breach of the covenants not to sue contained in the IMA and the Belief Letter. The lawsuit, filed in the Circuit Court of Cook County, Illinois, is captioned *Douglas Coe, et al. v. BDO Seidman, L.L.P., et al.*, Cause No. 2012 L 013691 (the "Lawsuit"). A copy of the complaint filed in the Lawsuit is attached hereto as Exhibit C.

26. On December 16, 2013, Gramercy transmitted a letter to Defendants seeking, by December 20, 2013, advancement of $250,000 to cover legal fees and costs anticipated to be incurred in connection with the Lawsuit (and expressly undertaking to repay any amounts advanced to the extent that it shall be determined ultimately that Gramercy is not entitled to be indemnified under the IMA). Defendants did not respond to Gramercy's letter.

27. On account of the valid and enforceable contracts requiring Coe to hold Gramercy harmless and refrain from bringing suit against Gramercy, and the repeated written acknowledgments that Gramercy provided no tax advice to him and would have no liability for transactions suggested by Coe and/or his advisors, Gramercy seeks an order directing Coe to

advance to Gramercy any future costs associated with the Lawsuit, and to indemnify Gramercy from any past, present, or future costs, fees, or expenses connected with the Lawsuit.  Coe is also liable for damages suffered by Gramercy as a result of Coe's violations of his agreements with Gramercy.  The damages suffered by Gramercy as a result of Coe's violations of his agreements with Gramercy exceed $75,000.

## FIRST CAUSE OF ACTION
### Breach of Contract (Investment Management Agreement)

28.     Plaintiffs restate and reallege the allegations set forth in Paragraphs 1 through 27 as if set forth fully herein.

29.     On November 5, 2001, Coe entered into an Investment Management Agreement with Gramercy.

30.     The Investment Management Agreement contained numerous provisions in which Coe agreed to indemnify, release, and hold Gramercy harmless for any and all claims concerning Gramercy's work on behalf of Coe to the fullest extent permitted by law, including but not limited to work performed in connection with Coe's tax transaction.

31.     In the Investment Management Agreement Coe also agreed to advance funds to Gramercy to cover expenses (including attorney's fees) incurred in defense or settlement of any claim arising out of or in connection with Gramercy's management of Coe's account and to indemnify and save Gramercy harmless from and against all claims arising out of his relationship with Gramercy and its affiliates.

32.     In an obvious and bad faith breach of the covenants not to sue contained in the Investment Management Agreement, Coe filed a complaint against Gramercy in Illinois state court on December 6, 2012.  (See Ex. C.)

33. In further breach of the Investment Management Agreement, to date Coe has refused to indemnify or advance funds requested by Gramercy as reimbursement for amounts expended to date and to be used in the future to defend against Coe's lawsuit against Gramercy.

34. As a result of Coe's breaches of the Investment Management Agreement, Gramercy is entitled to damages in the amount of, among other things, its legal fees to date, and advancement of future legal fees, along with additional damages to be determined at trial.

## SECOND CAUSE OF ACTION
### Breach of Contract (Belief Letter)

35. Plaintiffs restate and reallege the allegations set forth in Paragraphs 1 through 34 as if set forth fully herein.

36. As set forth above, Coe executed a Belief Letter dated November 5, 2001 in connection with the transactions Gramercy executed at Coe and his advisors' behest.

37. This letter promised that Coe would not assert claims against Gramercy related to any tax liability incurred by Coe arising in connection with his tax strategy.

38. Coe has in fact brought suit against Gramercy in violation of the covenants contained in the belief letter, causing Gramercy to incur substantial costs.

39. As a result, Coe is in breach of the covenants contained in the belief letter he executed.

40. Accordingly, Gramercy is entitled to damages in the amount of, among other things, its legal fees and costs to date along with additional damages to be determined at trial.

## THIRD CAUSE OF ACTION
### Declaratory Judgment

41. Gramercy restates and realleges the allegations set forth in Paragraphs 1 through 40 as if set forth fully herein.

42. An actual, substantial, immediate, and real controversy exists between the parties regarding Defendants' ongoing contractual obligations to refrain from initiating litigation against Gramercy arising out of their relationship with Gramercy and its affiliates; to advance expenses to Gramercy; and to indemnify Gramercy pursuant to the provisions of the IMA and the accompanying letter.

43. Plaintiffs seek a declaration that Defendants have an existing and ongoing obligation to refrain from initiating litigation against Gramercy for tax related issues; to advance expenses incurred by Gramercy; and to fully indemnify Gramercy for its expenses pursuant to the indemnification provisions of the IMA and the accompanying letter.  Plaintiffs also seek an order directing Defendants to withdraw the Lawsuit and directing Defendants to advance fees and indemnify Gramercy in accordance with the IMA and the Belief Letter.

### FOURTH CAUSE OF ACTION
### Specific Performance

44. Gramercy restates and realleges the allegations set forth in Paragraphs 1 through 43 as if set forth fully herein.

45. Valid and enforceable contracts for good and valuable consideration in the form of the IMA and the Belief Letter exist between the parties for investment services as aforesaid.

46. Gramercy has dutifully performed all of its contractual obligations to Defendants arising under the foregoing contracts.

47. Upon information and belief, Defendants are able to perform their obligations under the contracts, specifically, by withdrawing their lawsuit against Gramercy; advancing legal fees to Gramercy; and indemnifying Gramercy pursuant to the indemnification provisions of the contracts.

48. The refusal of Defendants to perform their contractual obligations requires in right justice and equity the intervention of this Court to order specific performance to the extent that there is no adequate remedy at law for any or all of the relief sought by Plaintiffs.

### FIFTH CAUSE OF ACTION
### Promissory Estoppel

49. Gramercy restates and realleges the allegations set forth in Paragraphs 1 through 48 as if set forth fully herein.

50. Defendants made clear and unambiguous promises to Gramercy as aforesaid.

51. Gramercy relied on those promises, and that reliance was foreseeable by Defendants.

52. Gramercy suffered injury in reliance upon the promises of Defendants as aforesaid.

### RELIEF SOUGHT

WHEREFORE, Plaintiffs demand relief as follows:

(i) Damages in an amount to be determined at trial;

(ii) An award in the amount of the legal fees incurred to date by Plaintiffs for all amounts spent defending against Defendants' lawsuit currently pending in Illinois state court;

(iii) A declaration requiring and an order compelling Defendants to advance expenses incurred by Gramercy and to indemnify Gramercy consistent with their contractual obligations;

(iv) An order granting specific performance and compelling Defendants to advance funds to Gramercy and to indemnify Gramercy consistent with their contractual obligations;

(v) Attorney's fees and costs of suit; and,

(vi)    Such other and further relief as the Court may deem just and appropriate.

Dated:   New York, New York
         April 15, 2014

        /s/ Michael E. Petrella
        Sean F. O'Shea
        Michael E. Petrella
        **O'SHEA PARTNERS LLP**
        521 Fifth Avenue, 25th Floor
        New York, New York 10175
        Tel:    (212) 682-4426
        Fax:   (212) 682-4437